UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
PINNACLE AGRICULTURE DISTRIBUTION, INC.,
f/k/a JIMMY SANDERS INCORPORATED

        Plaintiff,

   - against -                    **MEMORANDUM AND ORDER**

BENJAMIN WATTS,                     18 Civ. 5365 (NRB)

        Defendant.
----------------------------------------X

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

Plaintiff Pinnacle Agriculture Distribution, Inc. ("Pinnacle") brought this suit against defendant Benjamin Watts ("Watts") alleging that Watts violated various restrictive covenants contained in retention bonus agreements signed by Watts during the course of his employment at Pinnacle. Before the Court is defendant's partial motion to dismiss plaintiff's first and fourth causes of action for breach of contract and breach of the implied covenant of good faith and fair dealing, respectively. For the reasons that follow, that motion is granted.

**I.   Background**

The following facts are drawn from Pinnacle's Complaint and the documents appended thereto. The facts alleged by Pinnacle, to the extent well-pleaded, are accepted as true.

Plaintiff Pinnacle is a large farm and agriculture distribution company. Compl. ¶ 9. Defendant Watts was a sales

representative for Pinnacle from September 2012 until his voluntary resignation in June 2018. Id. ¶ 14. On July 30, 2013, defendant signed a retention bonus agreement ("2013 agreement"), which had been offered to him by plaintiff. Id. ¶ 19. That agreement imposed various restrictive covenants on defendant's post-employment activities in exchange for monetary bonus incentives. 2013 Agreement, ECF No. 7-1, at 1. Of particular relevance, Section 1(a)(i) of the agreement stated that defendant would be prohibited during the 12-month period following the termination of his employment from engaging in "activities . . . that compete directly or indirectly with" Pinnacle's business. Id. at 5. Such "Competitive Activities" were defined in Section 1(a)(i) as:

> including (A) soliciting or attempting to solicit any customer, client, supplier, developer, subcontractor, licensee, licensor or other business relation . . . of [Pinnacle] to purchase any services of the type provided by [Pinnacle] from anyone other than [Pinnacle], (B) providing services to any customer, client, supplier or other business relation of [Pinnacle], or (C) assist any Person in any way to do, or attempt to do, anything prohibited by 1(a)(ii)(A) or (B) above.

Id. The agreement, however, further stated that "the non-complete [sic] in Section 1(a)(i)" would not apply to defendant "unless otherwise mutually agreed in a prior or future retention bonus award or other agreement." Id. at 1. It is undisputed that the parties never executed an agreement

stating that the non-compete in Section 1(a)(i) *would* apply to defendant.

Immediately after resigning from Pinnacle, Watts assumed a sales position role for Crop Production Services, Inc. ("CPS"). Compl. ¶ 29. In that role, Watts has either solicited or attempted to solicit at least one Pinnacle customer. Id. ¶ 33. Watts has also provided services to at least one Pinnacle customer. Id. ¶ 36. Pinnacle now brings the present Complaint alleging, inter alia, that Watts has violated Section(1)(a)(i) of the 2013 agreement, as well as the implied covenant of good faith and fair dealing. Id. ¶¶ 41, 53.

**II.  Discussion**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation and internal quotation marks omitted). We accept all factual allegations as true and draw all reasonable inferences in the plaintiff's favor. Biro v. Condé Nast, 807 F.3d 541, 544 (2d Cir. 2015). However, "[i]f a document relied on in the complaint contradicts allegations in the complaint, the document . . . control[s], and the court need not accept the allegations in the complaint as true." Poindexter v. EMI Record Grp. Inc., No. 11 Civ. 559 (LTS), 2012 WL 1027639, at *2 (S.D.N.Y. Mar. 27, 2012).

3

"Under New York law, the initial interpretation of a contract is a matter of law for the court to decide. Where the agreement is unambiguous, a court may not admit extrinsic evidence and interprets the plain language of the agreement as a matter of law." Kamfar v. New World Rest. Group, Inc., 347 F. Supp. 2d 38, 48–49 (S.D.N.Y. 2004). "Language whose meaning is otherwise plain is not ambiguous merely because the parties urge different interpretations in the litigation." Metro. Life Ins. Co. v. RJR Nabisco, Inc., 906 F.2d 884, 889 (2d Cir. 1990). And "[t]he court should not find the language ambiguous on the basis of the interpretation urged by one party, where that interpretation would 'strain[ ] the contract language beyond its reasonable and ordinary meaning.'" Id. (internal citation omitted).

Defendant argues that plaintiff's first cause of action for breach of Section (1)(a)(i) of the 2013 agreement should be dismissed because the plain text of the agreement makes clear that Section (1)(a)(i), in its entirety, does not apply to defendant. Def.'s Br., ECF No. 17, at 2. Plaintiff counters that Section (1)(a)(i) consists of multiple restrictive covenants and, while the "non-compete" clause itself does not apply to defendant, he is nonetheless prohibited from engaging in "Competitive Activities" as defined in Section (1)(a)(i). Compl. ¶ 23. In support of this contention, plaintiff asserts that the use of the qualifier "non-compete" in the phrase "the non-complete [sic] in Section 1(a)(i)"

4

must mean that Section 1(a)(i) contains additional restrictive covenants other than the non-compete. Pl.'s Br., ECF No. 20, at 8.

Plaintiff's interpretation of Section (1)(a)(i) would "strain[ ] the contract language beyond its reasonable and ordinary meaning." RJR Nabisco, Inc., 906 F.2d at 889. The definition of "Competitive Activities" is simply a partial listing of activities that would violate Section (1)(a)(i)'s non-compete restriction; it is not a separate and independent restrictive covenant. This is apparent from the agreement's use of the word "including," which implies that the "Competitive Activities" listed thereafter merely constitute a sub-set of the behaviors prohibited by Section(1)(a)(i). See Pinnacle Agric. Distrib., Inc. v Watts, 2019 N.Y. Misc. LEXIS 1158 (Sup. Ct. N.Y. Cty. Mar. 15, 2019).[1]

Plaintiff next argues that it would be premature to dismiss the first cause of action because discovery could reveal the extent to which the parties understood Section(1)(a)(i) to contain multiple restrictive covenants, including both a "'non-compete' component and a 'non-solicit' component . . . ." Pl.'s Br., at 9. But "where the language of a contract is unambiguous, the parties' intent is determined within the four corners of the contract,

---

[1] The cited state action concerned a dispute between Pinnacle and another of its former employees over the same restrictive covenant language at issue here. While the former employee involved in that action is also (coincidentally) named Watts, he is not a relative of the defendant in the present action.

without reference to external evidence." Feifer v. Prudential Ins. Co. of Am., 306 F.3d 1202, 1210 (2d Cir. 2002). Here, the language of the 2013 agreement unambiguously indicates that Section 1(a)(i) did not apply to defendant. Therefore, it is appropriate for the Court to interpret "the plain language of the agreement as a matter of law" and dismiss plaintiff's first cause of action. Kamfar, 347 F. Supp. 2d at 48–49.

Defendant also moves to dismiss plaintiff's fourth cause of action -- for breach of the implied covenant of good faith and fair dealing -- as duplicative of plaintiff's first cause of action. Def.'s Br., at 3. "A claim for breach of the implied covenant will be dismissed as redundant where the conduct allegedly violating the implied covenant is also the predicate for breach of covenant of an express provision of the underlying contract." ICD Holdings S.A. v. Frankel, 976 F. Supp. 234, 243–44 (S.D.N.Y. 1997). Plaintiff argues that the fourth cause of action is not duplicative because it is predicated on defendant's alleged scheme to breach the 2013 agreement, rather than on the breach itself. Pl.'s Br., at 12. This conduct, plaintiff argues, is not covered by the 2013 agreement because it occurred before defendant left his employment at Pinnacle. Id. But contrary to plaintiff's assertion, "the applicable restrictive [covenant]" applied "while Watts was an employee of the company," and plaintiff's fourth cause of action is consequently "duplicative of the breach of contract claim

6

. . . ." Pinnacle, 2019 N.Y. Misc. LEXIS 1158, at *12-13. This conclusion is only reinforced by the fact that plaintiff seeks identical relief for its first and fourth causes of action. Compl. ¶¶ 43, 54; see also Compagnia Importazioni Esportazioni Rapresentanze v. L-3 Commc'ns Corp., No. 06 CIV 3157 (NRB), 2007 WL 2244062, at *6 (S.D.N.Y. July 31, 2007) (dismissing as duplicative a claim for breach of the implied covenant because, "in pursuing [that] claim[,] [plaintiff was] seeking the same relief requested in the breach of contract claim"). Accordingly, we dismiss plaintiff's fourth cause of action.

### III. Conclusion

For the foregoing reasons, defendant's partial motion to dismiss is granted.

The defendant should file no later than May 14, 2019 a responsive pleading as to the claims that remain.

The Clerk of Court is respectfully directed to terminate the motion pending at Docket Number 16.

**SO ORDERED.**

Dated:  New York, New York
        April 23, 2019

NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE